IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

```
                               :
KIESHA D. LEWIS
                               :
     v.                        :    Civil Action No. DKC 22-2566
                               :
UNITED STATES OF AMERICA, et al.
                               :
```

## MEMORANDUM OPINION

Presently pending and ready for resolution in this case brought by Plaintiff Kiesha Lewis for the "intentional infliction of emotional distress" are the motion to dismiss by Defendant United States, (ECF No. 18), the motion to sever and remand by Plaintiff Kiesha Lewis, (ECF No. 20), the motion for judgment on the pleadings by Defendant Toyota Motor Credit Corporation ("TMCC"), (ECF No. 26), and the motion to strike by Plaintiff, (ECF No. 27).  The issues have been briefed, and the court now rules, no hearing being necessary.  Local Rule 105.6.  For the following reasons, the United States' motion to dismiss will be granted, Plaintiff's motion to sever and remand will be denied, TMCC's motion for judgment on the pleadings will be granted, and Plaintiff's motion to strike will be denied.

## I.   Background

Plaintiff Kiesha Lewis filed this suit in the District Court of Maryland for Prince George's County, Maryland.   (ECF No. 2). All allegations in her complaint are contained in one paragraph:

> This is an "[i]ntentional infliction of emotional distress" claim.   In tax year 2016, both Toyota Motor Credit [Corporation] (TMCC) and I filed a 1099-C form, Cancellation of Debt, for a 2010 Toyota Sienna van.   On June 16, 2022, I received documentation from the IRS proposing to alter my 2020 tax returns to claim this debt again.   Based on the documentation I received, it appears that both TMCC and IRS are intentional[ly] inflicting emotional distress on me; TMCC by submitting a second 1099-C form, the IRS by proposing to alter my tax return to claim this debt again despite the fact that their records show that this debt was already claimed in a previous tax year.

(ECF No. 2).   The complaint names as defendants the Commissioner of the Internal Revenue Service ("IRS") and Toyota Motor Credit Corporation ("TMCC").[1]   It also claims $5000 in money damages and requests "[c]orrection of [Plaintiff's] records at all

---

[1]      In her complaint, Plaintiff also handwrote the name "Hiroyoshi Korosue" above the name of Defendant TMCC.   The complaint does nothing to identify this individual or explain his or her involvement in the case.   The complaint makes allegations only against TMCC and the IRS—not Hiroyoshi Korosue.   It likewise appears that this individual has not appeared either in this court or state court.   TMCC's attorneys have filed appearances on behalf of TMCC exclusively.   Additionally, in her motion to remand, Plaintiff asks the court to "return the case against TMCC to Maryland State Court," without any specific mention of Hiroyoshi Korosue.   (ECF No. 20, at 1).   Thus, the court will construe the complaint as naming one Toyota defendant: TMCC.

organizations." (ECF No. 2). TMCC filed a notice of intention to defend in state court. (ECF No. 1-3).

Acting on behalf of the IRS Commissioner, the United States removed the case to this court and explained that it should be substituted as a defendant for the IRS commissioner because "the relief sought [by Plaintiff] would expend itself on the public treasury and restrain the federal government from action." (ECF No. 1, at 2). When docketing this case, the court substituted the United States as a defendant for the IRS commissioner. (ECF No. 18-1, at 2).

In this court, the United States moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), (ECF No. 18), Plaintiff responded, (ECF No. 21), and the United States replied, (ECF No. 24). Plaintiff moved to sever the claim against TMCC and remand it to state court, (ECF No. 20), and both Defendants filed responses, (ECF Nos. 23, 25). TMCC moved for judgment on the pleadings under Rule 12(c), (ECF No. 26), to which Plaintiff responded, (ECF No. 29). Finally, Plaintiff filed a motion to strike under Rule 12(f), (ECF No. 27), to which no party responded.

## II.  Standards of Review

A court will grant a motion to dismiss under Rule 12(b)(1) "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."

3

*Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).  In deciding a 12(b)(1) motion, courts "may consider evidence outside the pleadings." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

When deciding a motion to dismiss under Rule 12(b)(6), a court must accept as true a complaint's well-pleaded allegations, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999).  A court need not, however, accept legal conclusions couched as factual allegations, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), or conclusory factual allegations devoid of any reference to actual events, *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

Under Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Rule 12(c) motions are analyzed under the same standard as those under Rule 12(b)(6), except that courts may consider the answer as well as the complaint.  *See Burbach Broad. Co. of Del. V. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002).  Thus, the court assumes all facts alleged in the complaint are true and draws all reasonable factual inferences in the plaintiff's favor. *Burbach Broad Co. of Del.*, 278 F.3d at 406.

## III. Analysis

### A.   The United States' Motion to Dismiss

The United States argues that the claim against it should be dismissed because it is barred by sovereign immunity.  (ECF No. 18-1, at 4).  Under the sovereign immunity doctrine, the United States generally "may not be sued without its consent." *Strickland v. United States*, 32 F.4th 311, 363 (4th Cir. 2022) (citing *United States v. Mitchell*, 463 U.S. 206, 212 (1983)).  Congress may, however, enact statutes that waive the government's sovereign immunity for certain causes of action.  *Id.*  The United States Court of Appeals for the Fourth Circuit and the Supreme Court have described the waiver of sovereign immunity as "a prerequisite for jurisdiction." *Robinson v. U.S. Dep't of Educ.*, 917 F.3d 799, 801 (4th Cir. 2019) (quoting *Mitchell*, 463 U.S. at 212).  Thus, when a plaintiff sues the federal government and the government moves to dismiss on sovereign immunity grounds, the plaintiff "bears the burden of showing that the government has waived sovereign immunity at the motion to dismiss stage."  *Id.* at 802.[2]

Plaintiff's complaint does not identify any basis for a waiver or abrogation of sovereign immunity.  (ECF No. 2).  In her response to the United States' motion to dismiss, she appears to argue that

---

[2]    *See also Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005) ("[I]t is the plaintiff's burden to show that an unequivocal waiver of sovereign immunity exists.").

the government's sovereign immunity has been "nullified" by the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.* (ECF No. 21, at 3). The FTCA "was designed primarily to remove the sovereign immunity of the United States from suits in tort." *Levin v. United States*, 568 U.S. 503, 506 (2013) (quoting *Richards v. United States*, 369 U.S. 1, 6 (1962)). To that end, the statute permits a plaintiff to bring a tort claim for "money damages" against the United States "in accordance with the law of the place where the [alleged tortious] act . . . occurred." 28 U.S.C. § 1346(b)(1).

The FTCA does not, however, waive sovereign immunity for every tort claim for money damages brought against the government. *Levin*, 568 U.S. at 507. Rather, the statute provides a list of claims to which the immunity waiver does not apply. 28 U.S.C. § 2680. For these excepted claims, the government's immunity is "preserve[d]." *Levin*, 568 U.S. at 507. Among those exceptions is Section 2680(c), which preserves the government's immunity from "[a]ny claim arising in respect of the assessment or collection of any tax." The Fourth Circuit has held that this exception applies to any suit involving "activities that are even remotely related to the assessment or collection" of "a specific tax debt." *Perkins v. United States*, 55 F.3d 910, 915 (4th Cir. 1995).

The tax exception applies in this case. Plaintiff's sole allegation against the United States is that the IRS improperly

seeks to tax her twice for a single debt cancellation.  (ECF No. 2).  An alleged incorrect assessment of taxes surely "aris[es] in respect of the assessment or collection of any tax."  28 U.S.C. § 2680(c).  *See, e.g.*, *Aetna Cas. & Sur. Co. v. United States*, 71 F.3d 475, 477–78 (2ᵈ Cir. 1995) (holding that the FTCA tax exception applied where the IRS withheld a portion of a tax refund to which the plaintiff claimed it was entitled); *Am. Assoc. of Commodity Traders v. Dep't of Treasury*, 598 F.2d 1233, 1235 (1ˢᵗ Cir. 1979) (holding that the FTCA tax exception applied where it was alleged that the IRS "maliciously" over-taxed the plaintiff).  Because the tax exception applies to Plaintiff's claim, the United States retains sovereign immunity against that claim.

Plaintiff's only response is that sovereign immunity does not apply here because she filed federal paperwork notifying the IRS of her claim before she sued.  (ECF No. 21, at 3).  That argument misunderstands the FTCA.  To be sure, a plaintiff cannot sue under the FTCA before she "present[s] the claim to the appropriate Federal agency" and the agency denies it in writing.  28 U.S.C. § 2675(a).  Meeting that prerequisite, however, merely allows a plaintiff to bring a suit that the FTCA otherwise permits.  It does not remove the government's sovereign immunity for claims to which the FTCA's immunity waiver does not apply in the first place.  *See* 28 U.S.C. § 2680.  Because sovereign immunity bars Plaintiffs'

tax claim altogether, her compliance with the FTCA's notice requirement does not make the United States any less immune.[3]

### B.   Plaintiff's Motion to Sever and Remand

Plaintiff moves to sever and remand her claim against TMCC. (ECF No. 20).   TMCC opposes the motion, in part because "[s]evering the co-defendants at this stage of the litigation would . . . be

---

[3]      Beyond requesting $5000 in money damages, the complaint also vaguely requests "[c]orrection of [Plaintiff's] records at all organizations." (ECF No. 2).   The FTCA, however, waives sovereign immunity only for claims that seek "money damages." *See* 28 U.S.C. § 1346(b).   Thus, to the extent that plaintiff's vague demand could be construed as a request for injunctive relief, the court "lack[s] jurisdiction under the FTCA to accord it." *Talbert v. United States*, 932 F.2d 1064, 1065-66 (4th Cir. 1991) (affirming dismissal of an FTCA claim where the plaintiff "sought the correction of . . . [government] records") (internal quotation omitted).

Even if Plaintiff's record correction request was not barred by sovereign immunity, the United States notes correctly that the Anti-Injunction Act generally bars "suit[s] for the purpose of restraining the assessment or collection of any tax." 26 U.S.C. § 7421.   Plaintiff responds that she does not intend to "restrain[] the assessment or collection of taxes," but rather to "ensur[e] that the [t]ax [c]ollection system is fair, equitable, [and] is not being used as a means of retaliation." (ECF No. 21, at 2). That statement does little to clarify whether Plaintiff is seeking an injunction or what kind of injunction she would prefer to obtain.   Regardless, the Anti-Injunction Act does not ask courts to "prob[e] an individual taxpayer's innermost reasons for suing." *CIC Servs., LLC v. Internal Revenue Serv.*, 141 S.Ct. 1582, 1590 (2021).   Rather, courts ask whether the "substance" of the requested injunction would restrain tax collection. *Id.*   If Plaintiff seeks to force the United States to change its internal records so that they do not show the tax debt Plaintiff contests, such an injunction would restrain the United States' collection of that debt. *See id.* at 1593 (noting that the Anti-Injunction Act bars a plaintiff from suing to pre-emptively enjoin the government's collection of a disputed tax debt; rather, "the sole recourse is to pay the tax and seek a refund").

a waste of judicial resources." (ECF No. 23-1, at 2). The United States takes no position on severance and remand of the claim against TMCC. (ECF No. 25, at 1). None of the parties brief the legal standards that govern this motion.

The United States removed this case under 28 U.S.C. § 1442(a)(1), which states that a federal defendant—such as the "United States or any agency thereof"—may remove a "civil action . . . commenced in a State court . . . against" that defendant. When a defendant removes a case under this statute and raises a federal defense, the district court acquires federal question jurisdiction over the claim against that defendant. *See Jamison v. Wiley*, 14 F.3d 222, 238-39 (4th Cir. 1994) (citing *Mesa v. California*, 489 U.S. 121, 136-37 (1988)). This removal, however, does not merely include the claims in which the federal defendant is involved—rather, the statute requires removal of the entire "civil action," including all claims against all parties. 28 U.S.C. § 1442(a). Thus, when a case removed under Section 1442(a) also includes state law claims against nonfederal defendants, the statute effectively allows a district court to exercise "a species of statutorily-mandated supplemental subject-matter jurisdiction" over those other claims. 14C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3726 (Rev. 4th ed. Apr. 2023) [hereinafter Wright & Miller].

The district court's jurisdiction in this context is established "[w]hen a case has been properly removed"—that is, when the federal defendant follows the required "removal procedure[s]" and "raise[s] a colorable federal defense." *Jamison*, 14 F.3d at 238-39 (internal citations omitted).  From that point forward, "later developments in the suit" do not "defeat[]" the district court's jurisdiction. *Id.* at 239 (internal quotation marks omitted).  Indeed, even after the claim against the federal defendant is resolved and that defendant "drops out of the case," the district court may still exercise supplemental jurisdiction over the remaining state law claims.  Wright & Miller § 3726.  For instance, a district court may retain supplemental jurisdiction after the plaintiff abandons its claims against the federal defendant, *see Wood v. Crane Co.*, 764 F.3d 316, 320 n.4 (4th Cir. 2014), or after the claim against the federal defendant is dismissed on exhaustion grounds, *see IMFC Prof'l Servs. Of Florida, Inc. v. Latin Am. Home Health, Inc.*, 676 F.2d 152, 156, 158-59 (5th Cir. 1982) (holding that, while the plaintiff's failure to exhaust was a "jurisdictional defect depriving the court of subject matter jurisdiction over the complaint against the government," the district court "retained . . . ancillary jurisdiction" over the "state law controversy" that remained after the government was dismissed and had "discretion to remand").

10

Other courts have reached the same conclusion in cases where the claim against the federal defendant was barred by sovereign immunity.  The United States Court of Appeals for the District of Columbia Circuit held that a district court "d[id] not lose its ancillary . . . jurisdiction over the state law claims against the remaining non-federal parties" after the removing federal defendant was dismissed on sovereign immunity grounds.  *D.C. v. Merit Sys. Prot. Bd.*, 762 F.2d 129, 131-33 (D.C. Cir. 1985). *See also McNeil v. Duncan*, No. 19-694, 2022 WL 2785970, at \*5 (D.D.C. July 15, 2022) (holding that where "the dismissal of the United States on sovereign immunity grounds leaves [only] . . . state-law tort claims against [nonfederal] Defendants," the court "retains the power either to adjudicate the underlying state law claims or to remand the case to state court") (internal quotation marks omitted).[4]

---

[4]    The Supreme Court has "not passed on the question whether, when sovereign immunity bars the claims against the only parties capable of removing the case, subject-matter jurisdiction exists to entertain the remaining claims." *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 233-34, 235 n.3 (2007); *but see Rosado v. Wyman*, 397 U.S. 397, 403 n.3, 404, 405 n.6 (1970) (holding that, because a district court's "jurisdiction is vested at the outset" of the case, a district court may choose to retain supplemental jurisdiction over a pendent claim even if the primary claim becomes moot during litigation, and rejecting "a conceptual approach that would require jurisdiction over the primary claim at all stages [of the case] as a prerequisite to resolution of the pendent claim").

These holdings fit the Fourth Circuit's instruction that "later developments in the suit"—including the subsequent disposition of a federal defense—cannot oust the jurisdiction a district court acquires "[w]hen a case has been properly removed" under Section 1442(a). *See Jamison*, 14 F.3d at 238-39 (internal quotation marks omitted). In this case, the jurisdiction the court acquired upon removal included both federal question jurisdiction over the claim against the United States and supplemental jurisdiction over the claim against TMCC. While the claim against the United States has been dismissed, that "later development" does not eliminate the court's supplemental jurisdiction over TMCC's claim. Thus, the court now has discretion to decide whether to exercise that jurisdiction or remand the case.

The decision whether to remand in this context "depends on considerations of comity, federalism, judicial economy, and fairness to litigants." Wright & Miller § 3726; *see also Wood*, 764 F.3d at 320 n.4 (noting the same factors). Other courts in this district have also considered the discretionary factors listed in the federal supplemental jurisdiction statute, 28 U.S.C. § 1367(c). *See, e.g., Rhodes v. MCIC, Inc.*, 210 F.Supp.3d 778, 787 (D.Md. 2016). Those factors include: (1) whether the supplemental claim "raises a novel or complex issue of State law," (2) whether the claim "substantially predominates over the . . . claims over which the district court has original jurisdiction,"

(3) whether the court has "dismissed all claims over which it has original jurisdiction," and (4) "other compelling reasons for declining jurisdiction." *See* 28 U.S.C. § 1367(c).

In this case, these considerations weigh against remand. While the court has already decided that the claim against the United States will be dismissed, the complaint effectively raises an identical claim against TMCC, and both Defendants have already briefed the merits of that claim in this court. (ECF Nos. 18, at 7-8; 26, at 3-5). It would waste judicial resources to subdivide a complaint that "only contains one count against all Defendants," resolve that single claim only as it applies to a federal defendant, and then force a state court to resolve the same claim against the other defendant. *See Rhodes*, 210 F.Supp.3d at 787; *cf. Joyner v. A.C. & R. Insulation Co.*, Civ. No. 12-cv-2294-CCB, 2013 WL 877125, at *10 (D.Md. Mar. 7, 2013) (remanding in part because the claim against the federal defendant was "but one sliver of [the] complaint").

Denying remand would also be fairer to the parties, which have already filed and briefed multiple motions in this court. (*See* ECF Nos. 18, 20, 21, 23, 24, 25, 26, 27, 29). Finally, while remand is a way to show comity toward "Maryland's prerogative to apply its own laws," that principle has greater force where the remanded claim involves a "novel or complex issue of State law." *Joyner*, 2013 WL 877125, at *10 (internal quotation marks omitted).

13

As explained below, Plaintiff's state law claim against TMCC is easily resolvable and presents no complex state law issues. Thus, Plaintiff's motion to sever and remand will be denied.

    **C.**   **TMCC's Motion for Judgment on the Pleadings**

TMCC asserts that Plaintiff's complaint fails to state a claim for intentional infliction of emotional distress ("IIED"). "A claim of IIED has four elements: (1) The conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; (4) the emotional distress must be severe." *Manikhi v. Mass Transit Admin.*, 360 Md. 333, 367 (2000) (cleaned up). "[E]ach of these elements must be pled and proved with specificity." *Id.* (internal quotation marks omitted).

TMCC argues that Plaintiff failed to allege that Defendants engaged in any "extreme and outrageous conduct" and that Plaintiff failed to allege facts sufficient to show that she suffered severe distress. (ECF No. 26, at 4-5). Plaintiff responds by claiming that TMCC "circumvented established [IRS] safety, security and data integrity protocols"—conduct that Plaintiff believes to be "egregious." (ECF No. 29, at 2-6).

Plaintiff's allegations are insufficient to state an IIED claim. To start, the complaint does not satisfy the second IIED element—"extreme and outrageous" conduct. *Manikhi*, 360 Md. at

14

367.   This element requires conduct that "go[es] beyond all possible bounds of decency, a[s] to be regarded as atrocious[] and utterly intolerable in a civilized community." *Batson v. Shiflett*, 325 Md. 684, 733 (1992) (internal quotation marks omitted).  It is not enough for a defendant to have subjected a plaintiff to "indignities" or "petty oppressions," even if the defendant acted with "tortious," "criminal," or "malic[ious]" intent.  *Id.* at 734-35 (internal quotation marks omitted).  For instance, the Supreme Court of Maryland held that this element was satisfied where an insurer allegedly sought to avoid making worker's compensation payments by harassing a suicidal disabled claimant so that she would "commit suicide, or in the alternative . . . drop her [compensation] claim." *Young v. Hartford Accident & Indemnity*, 303 Md. 182, 188-89, 198-99 (1985) (internal quotation marks omitted).  By contrast, this element was not satisfied where a company intentionally withheld and delayed required disability payments.  *Gallagher v. Bituminous Fire & Mar. Ins.*, 303 Md. 201, 205-06, 211-13 (1985).

Plaintiff seems to assert that TMCC acted outrageously by filing two debt cancellation forms with the hope that the IRS would over-tax Plaintiff.  (ECF No. 2).  That allegation at most suggests that TMCC acted with an improper motive, which is by itself insufficient.  *See Batson*, 325 Md. at 735.  Indeed, the allegation that TMCC intentionally sought to make Plaintiff overpay on taxes

15

is rather similar to the allegation that a company intentionally underpaid a plaintiff's benefits, which the Supreme Court of Maryland found to "fall[] woefully short of alleging conduct which is extreme and outrageous." *Gallagher*, 303 Md. at 211.

Next, even if Plaintiff had alleged that TMCC engaged in outrageous conduct, she certainly has not alleged enough to satisfy the fourth IIED element—severe emotional distress. That element requires distress "so acute that no reasonable [person] could be expected to endure it." *Caldor, Inc. v. Bowden*, 330 Md. 632, 643 (1993) (internal quotation marks omitted). To plead such distress, a party must "state with reasonable certainty the nature, intensity or duration of the alleged emotional injury." *Manikhi*, 360 Md. at 370. For instance, the Supreme Court of Maryland held that a party pled this element by alleging that the defendant's actions caused "systemic hypertension," "loss of visual acuity in his left eye," "shock," "fright to his nervous system," "depression," "anxiety," and "obsession"—all of which required "hospitalization," "psychological therapy" and "counseling." *Figueiredo-Torres v. Nickel*, 321 Md. 642, 656 (1991). By contrast, the court held that a party failed to prove this element when the defendant's actions merely caused the party to feel "upset" and "confused," and led him to seek out one therapy appointment on the eve of litigation. *Bowden*, 330 Md. at 644-45.

In this case, Plaintiff does not specifically allege that she suffered *any* kind of emotional distress—severe, acute, or otherwise.  She does not, for example, claim to have suffered any specific symptoms or allege that she was forced to seek treatment.  Rather, she states only that "it appears that [TMCC is] . . . intentional[ly] inflicting emotional distress on me."  (ECF No. 2).  That conclusory statement is insufficient to state a plausible IIED claim.

> **D.   Plaintiff's Motion to Strike**

Plaintiff moves to strike certain statements in TMCC's motion for judgment on the pleadings.  (ECF No. 27, at 1-3).  Under Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  TMCC's motion for judgment on the pleadings refers to a bankruptcy petition Plaintiff filed in 2019.  (ECF No. 26, at 5, 9).  An affidavit attached to the motion states that Plaintiff also filed for bankruptcy in 2013 and that a co-signer on Plaintiff's car loan also filed for bankruptcy in the past.  (ECF No. 26, at 9).  Plaintiff argues that these statements should be stricken because they have "no bearing" on this case and are "scandalous attacks . . . that are unduly prejudicial."  (ECF No. 27, at 2).

Motions to strike under Rule 12(f) are generally disfavored because "striking a portion of a pleading is a drastic remedy"

that is "often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings v. Gilmore*, 252 F.3d 316, 347 (4ᵗʰ Cir. 2001) (internal quotations omitted).  The "disfavored character of Rule 12(f) is relaxed," however, "in the context of scandalous allegations"—that is, allegations that "improperly cast[] a derogatory light on someone."  5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1382 (3ᵈ ed. Apr. 2023). When an allegedly scandalous statement relates to "acts or events that are relevant to the action," it ought not be stricken simply because it "offends the sensibilities of the objecting party." *Id.*

As an initial matter, Rule 12(f) authorizes a court to strike statements "from a *pleading*." Fed.R.Civ.P. 12(f) (emphasis added). Pleadings generally include complaints and answers.  Fed.R.Civ.P. 7(a) (listing types of pleadings). Plaintiff, however, moves to strike statements from TMCC's *motion*.   "A motion is not a pleading," and "the weight of recent authority is that such an action is not contemplated or permitted by the Rules."  *Anusie-Howard v. Todd*, 920 F.Supp.2d 623, 627 (D.Md. 2013) (collecting cases).

Even if the court could strike statements from TMCC's motion, the statements to which Plaintiff objects are largely relevant to the case and responsive to her complaint.  The complaint alleges that Plaintiff received a waiver of debt on her car loan in 2016,

18

and that TMCC later filed "a second 1099-C form" in 2021 or 2022 so that the IRS would tax Plaintiff twice for the same debt cancellation.  (ECF No. 2).  TMCC responds that it did *not* file two separate 1099-C forms; rather, it was unable to file the form when Plaintiff's debt was first waived because Plaintiff had a "bankruptcy stay in effect."  (ECF No. 26, at 5).  TMCC claims that it waited until 2021 to file the form because that is when the bankruptcy stay was lifted.  Thus, TMCC referenced Ms. Lewis' bankruptcies not to attack her character but to provide relevant context in response to her allegations.  Beyond that, while the co-signor's bankruptcy may not be squarely relevant to this dispute, TMCC referenced that bankruptcy within an affidavit that provided a full explanation of the loan which created the later-cancelled debt at the core of this case.  The complaint put that loan at issue.  Thus, Plaintiff's motion to strike will be denied.[5]

## IV.  Conclusion

For the foregoing reasons, the motion of Defendant United States to dismiss will be granted, Plaintiff's motion to sever and remand will be denied, Defendant TMCC's motion for judgment on the

---

[5] In her motion to strike, Plaintiff also asks the court to "admonish Defendants' counsel to comply with the Maryland Attorneys' Rules of Professional Conduct and Attorney Trust Accounts."  (ECF No. 27, at 1, 3).  Plaintiff does not, however, explain precisely which rules of professional conduct she believes have been violated.  Nor does she further explain her request in any way.  The request will be denied.

pleadings will be granted, and Plaintiff's motion to strike will be denied.

                                    _____/s/_____
                                    DEBORAH K. CHASANOW
                                    United States District Judge